**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ADRIAN LAMAR COOPER,            ) | |
| )                              | |
| Petitioner,            ) | |
| )                              | |
| vs.                                      ) | **Case No. CIV-05-216-HE** |
| )                              | |
| MIKE MULLIN,                        ) | |
| )                              | |
| Respondent.            ) | |

**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. Pursuant to an order of United States District Judge Joe Heaton, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).   In a Report and Recommendation dated March 15, 2005, the undersigned concluded that Petitioner had submitted a mixed petition, and recommended either dismissal without prejudice, or that an amended petition omitting the unexhausted claim be filed.   Petitioner filed an amended petition on May 9, 2005, omitting his unexhausted claim. A response to the amended petition has been filed, as well as a reply, and thus the matter is now at issue.

Petitioner is challenging his conviction for shooting with intent to kill after former conviction of two or more felonies, for which he was sentenced to three hundred and ninety-nine years imprisonment.  Case No. CF-2002-56, District Court of Pottawatomie County.   On March 26, 2004, the Oklahoma Court of Criminal Appeals affirmed his conviction on direct appeal in Case No. F-2002-1348. Amended Petition, p. 2. Petitioner filed an application for post-conviction relief in the District Court of Pottawatomie County, which was denied on December 1, 2004.  Amended Petition, p. 2-3.  Petitioner

did not appeal the denial of post-conviction relief to the Oklahoma Court of Criminal Appeals, asserting ignorance as the reason for not doing so.  Amended Petition, p. 3.

Petitioner raises four grounds for relief.  In Ground One, he claims that there was insufficient evidence to support his conviction.  Amended Petition, p. 5.  In Ground Two, Petitioner claims that his due process rights were violated because the trial court permitted the introduction of a suggestive pre-trial identification and because the trial court permitted an eyewitness to change his testimony.  Amended Petition, p. 6.  In Ground Three, Petitioner claims that prosecutorial misconduct violated his due process rights.  Amended Petition, p. 7.  Finally, as his fourth ground for relief, Petitioner claims that cumulative error deprived him of a fair trial.[1]  Amended Petition, unnumbered page between p. 8 and p. 9.

## I. BACKGROUND

On January 27, 2002, Marlon Boyland heard the doorbell ring at his Shawnee house.  Tr. 29, 30.  Mr. Boyland asked who was there, and when he could not understand the response, he moved the blinds to see who was there.  Tr. 31-32.  Not recognizing the person standing on the doorstep, he opened the wooden door and the storm door.  Tr. 35-36.  Mr. Boyland asked the man "what's up?"  Tr. 36.  The person did not respond, and stared at Mr. Boyland for approximately thirty seconds before pulling out a gun and shooting Mr. Boyland in the head.  Tr. 36, 38, 39.  Mr. Boyland's girlfriend, who was in the kitchen, heard the shot approximately one minute after hearing the doorbell ring.  Tr.

---

[1] Petitioner's reply brief presents his claims in detail and omits at least one of the claims of prosecutorial misconduct set forth in the petition, the claim that the prosecutor implied that the trial judge believed him to be guilty.  Accordingly, although the claims of prosecutorial misconduct will each be addressed, it will not be in the order presented by Petitioner.

20, 21.  She entered the living room and found Mr. Boyland lying on the ground bleeding. Tr. 21.  He did not know who had shot him, but told her that he would recognize the shooter.  Tr. 22.

While he was in the hospital, Detective Carnell, showed Mr. Boyland a photographic array containing six pictures.  Tr. 41.  Mr. Boyland stated that the shooter was not in the array.  Tr. 41.  A few days later, on February 4, 2002,  Mr. Boyland was shown a second array and immediately identified the person in photograph 3 as the shooter.  Tr. 43-44, 91, 92.  Petitioner was photograph 3.[2]  Tr. 44.

## II. STANDARD GOVERNING PETITIONS FOR HABEAS CORPUS

For factual and legal issues that have already been adjudicated in state court, the Court may only grant a writ of habeas corpus if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2).

A state court's determination is contrary to clearly established federal law where it applies a rule that contradicts the law set forth in Supreme Court cases, or  confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court's determination involves an unreasonable application of clearly established Supreme Court precedent if it identifies the correct governing legal principle from the

---

[2] As will be discussed herein, Petitioner denies that he is the person depicted in photograph 3.

Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Id. at 413; see also Wiggins v. Smith, 539 U.S. 510, 520 (2003).  It is not enough that the state court applied clearly established federal law erroneously or incorrectly; the application must also be unreasonable.  Williams, 529 U.S. at 410-11; Valdez v. Bravo, 373 F.3d 1093, 1096 (10th Cir.), cert. denied, 125 S.Ct. 622 (2004).

### III.  PETITIONER'S GROUNDS FOR RELIEF

### A.  Sufficiency of the Evidence and the Suggestiveness of the Photographic Array

Petitioner's first and second grounds for relief are intertwined because the only testimonial evidence linking Petitioner to the crime was the testimony of the victim, Marlon Boyland.  Without Mr. Boyland's identification, the evidence against Petitioner would not have been sufficient to sustain a conviction.  Petitioner contends that Mr. Boyland's pretrial identification of him as the shooter was the result of an unduly suggestive photographic array, and that the impermissible pretrial identification tainted Mr. Boyland's subsequent in-court identification of Petitioner as the shooter.  Because Mr. Boyland's testimony was the basis for Petitioner's conviction, the undersigned will consider the first and second arguments raised in the petition in tandem.

In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court stated that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Id. at 384, 88 S.Ct. at 971. Where an eyewitness's pretrial photographic identification was not impermissibly suggestive, the admission of [the] in-court identification of the defendant does not violate the defendant's right to due process . . . .Any suggestiveness in the courtroom identification procedure is a matter for the jury to consider in weighing the persuasiveness of the witness's testimony.  See United States v. Matthews, 20 F.3d 538, 547 (2d

Cir. 1994) ("Generally if identification procedures used prior to trial were not unduly suggestive, questions as to the reliability of a proposed in-court identification affect only the identification's weight, not its admissibility.").

Romero v. Tansy, 46 F.3d 1024, 1032 (10th Cir. 1995). In assessing the suggestiveness of a pretrial identification, the Court engages in a two-tier analysis. The Court first considers whether the pretrial identification procedure was unnecessarily suggestive. Archuleta v. Kerby, 864 F.2d 709, 711 (10th Cir. 1989). If the procedure is found to have been unnecessarily suggestive, the Court must then weigh the corrupting influence of the suggestive procedure against the reliability of the identification itself. Manson v. Brathwaite, 432 U.S. 98, 114 (1977). Only when a pre-trial identification procedure is so unnecessarily suggestive that it is "conducive to irreparable mistaken identification" does the procedure violate due process. Kirby v. Illinois, 406 U.S. 682, 691 (1972). "[R]eliability is the linchpin in determining the admissibility of identification testimony...." Brathwaite, 432 U.S. at 114.

Accordingly, the first issue here is whether the Oklahoma Court of Criminal Appeals' determination that Petitioner did not establish that the pretrial array was unduly suggestive, is contrary to or an unreasonable application of clearly established federal law as enunciated by the Supreme Court. A number of factors are relevant in determining whether a photographic array was improperly suggestive, including: "the size of the array, the manner of its presentation by the officers, and the details of the photographs themselves." United States v. Sanchez, 24 F.3d 1259, 1262 (10th Cir. 1994). Such facts, if found by the Oklahoma Court of Criminal Appeals would be entitled to a presumption of correctness. English v. Cody, 241 F.3d 1279, 1283 (10th Cir. 2001). Here, however,

5

the Oklahoma Court of Criminal Appeals did not make any factual findings, concluding only, as a matter of law that the array was not suggestive.

The photo array in this case consisted of six photos displayed on a single page. The use of six photos in an array is not per se unconstitutional, but it is a factor affecting the weight given to other alleged irregularities. Sanchez, 24 F.3d at 1262. "The lower the number of photographs used by officers in a photo array, the closer the array must be scrutinized for suggestive irregularities." Id. at 1263.

In this case, there is no evidence that police conduct made the photographic array suggestive. The officer presented the array to the victim in a neutral fashion by setting it down in front of Mr. Boyland. Tr. 44, 92. There is no evidence that Mr. Boyland was told that the suspected shooter's photograph was in the array, and Detective Carnell testified that he did not suggest that Mr. Boyland choose any particular photo. Tr. 92. Additionally, when presented with the first array Mr. Boyland stated that none of the people therein was the shooter. Tr.41.

With regard to the particular photographs chosen, Petitioner contends that only two of the pictures show light-skinned black men of a small frame, how Mr. Boyland described the shooter to police when he was first interviewed on January 29, 2002. Tr. 61, 62, 63. Contrary to Petitioner's contentions, only one of the men pictured is obviously not a light-skinned black man. See State's Ex. 10, photograph 5 (submitted by Respondent on Aug. 16, 2005). Although Petitioner complains about the quality of photograph 3, that which the prosecution argued was him, none of the photos is of good quality. Furthermore, the pallor given to the face of the person in photograph 3, which

is orangeish, does not make his picture stand out so as to be the obvious choice as the perpetrator.  Although the heads of some of the persons in the array appear larger than others, nothing from the pictures permits the viewer to know how large the subject's head was relative to his body and whether the subject was small-framed.  Finally, the backgrounds have been removed from the photographs to prevent Mr. Boyland from determining the context of the photographs, which could have given him a hint as to which photograph was the person suspected by Detective Carnell to be the shooter.  Accordingly, the undersigned recommends that habeas corpus relief be denied on this claim because the decision of the Oklahoma Court of Criminal Appeals that the array was not unduly suggestive was not contrary to or an unreasonable application of clearly established federal law.

Even if the undersigned assumes the photo array was unduly suggestive, Petitioner should not prevail on this claim, because the identification by Mr. Boyland was nevertheless reliable.  See Neil v. Biggers, 409 U.S. 188,199 (1972)(The central question is whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive).  The Supreme Court has enumerated five factors for courts to consider in determining whether a pretrial identification is reliable:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Grubbs v. Hannigan, 982 F.2d 1483, 1490 (10th Cir. 1993) (quoting Neil, 409 U.S. at 199-200).  These factors should be weighed against the corruptive effect of a suggestive pretrial identification procedure. Id.

In this case, the shooting occurred on the well-lighted porch of Mr. Boyland's home, a fact testified to by Mr. Boyland and Detective Carnell.  Tr. 35, 84.  Prior to opening the door, there was nothing obstructing Mr. Boyland's view of Petitioner.  Tr. 35.  Once he opened the door, Mr. Boyland concentrated on the shooter's face before the shot was fired, while the never-before-seen person stared at him.  Tr. 38.  The shooter and the victim were only a few feet away from one another.  Tr. 36.  Mr. Boyland viewed the second photo array on February 4, 2002, a mere eight days after the shooting.  Tr.91.  Mr. Boyland immediately identified the person in photograph 3 as being the shooter.  Tr. 43-44, 92  Furthermore, although Petitioner is not as tall as the shooter described by Mr. Boyland, he otherwise matches the description given by Mr. Boyland when he first spoke with Detective Carnell.  The undersigned concludes that weighing each of the factors and balancing them against the suggestiveness of the array, that there was no substantial likelihood of irreparable misidentification.  This conclusion is bolstered by the fact that Mr. Boyland immediately declined to identify any suspect from the first array, indicating that he was not merely looking to find a suspect.  Accordingly, Petitioner's due process rights were not violated by the admission of the pretrial identification against him.

With regard to Petitioner's in court identification, as noted above, a conviction based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification

procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Because there was no substantial likelihood of irreparable misidentification, the conviction here based on Mr. Boyland's testimony at trial did not violate Petitioner's due process rights.

Because the admission of Mr. Boyland's identification of Petitioner through the photo array and in trial did not violate Petitioner's due process rights, the jury's determination that Mr. Boyland was credible provides sufficient evidence to support Petitioner's conviction. In a habeas challenge to the sufficiency of the evidence presented at trial the Court "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." Herrera v. Collins, 506 U. S. 390, 402 (1993). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). In applying this standard, the Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but, "must 'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting Grubbs, 982 F.2d at 1487.

Although the Oklahoma Court of Criminal Appeals did not directly cite Jackson, it applied an analogous state standard, finding that "the evidence, when viewed in a light most favorable to the State, was sufficient for any rational trier of fact to have found the essential elements of the crimes charged beyond a reasonable doubt." Summary Opinion,

p. 3.  (citing <u>Spuehler v. State</u>, 709 P.2d 202, 203-04 (Okla.Crim.App.1985), which relied on <u>Jackson</u>).  The question therefore, is whether the Oklahoma Court of Criminal Appeals' decision was contrary to or involved an unreasonable application of <u>Jackson</u>, or whether it was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1)-(2).

Petitioner does not assert that the State failed to prove any particular element of the charged offense of shooting with the intent to kill after former conviction.  He argues that he was not the perpetrator.  However, viewing the evidence in the light most favorable to the State requires that the Court accept as true Mr. Boyland's testimony, including his identification of Petitioner as the shooter.   This testimony was sufficient to establish that Petitioner was the perpetrator of the crime.  Accordingly, because Petitioner does not challenge the determination that the shooter had the intent to kill, the undersigned concludes that the Oklahoma Court of Criminal Appeals' determination that there was sufficient evidence to support the conviction was not an unreasonable application of <u>Jackson</u> and therefore Petitioner is not entitled to relief on this claim.

## B.  The Picture in the Array is not the Petitioner and Mr. Boyland's Credibility

Petitioner's second ground for relief also alleges, as counsel did very generally on direct appeal, that the person in photograph 3 is not him.  Petitioner's counsel argued this fact to the jury and raised the issue on direct appeal in the opening portion of his brief.  Tr. 214, Brief of Appellant, p. 3, n. 1.   (Included in Response to Petition, Ex.1).  Assuming, as Respondent argues, that this claim is not exhausted, the Court should

exercise its discretion under 28 U.S.C. § 2254(b)(2) to deny the claim.  The same holds true for Petitioner's contentions regarding Mr. Boyland's inconsistent testimony.

Petitioner has not cited to any Supreme Court case establishing that his constitutional rights were violated when the jury accepted as true Mr. Boyland's identification of him as the person depicted in photograph  3.  Counsel argued and the jury chose not to accept the contention that the picture was not Petitioner.  Petitioner did not present any evidence at trial that he was not the individual depicted in photograph 3 while the State presented the testimony of Detective Carnell that photograph 3 was Petitioner.  Tr. 91.  The State also presented the testimony of Petitioner's former roommate who testified that it could be him, after previously testifying that it was him.  Tr. 181, 183.  Issues of credibility are the province of the jury, which chose to believe Mr. Boyland and to conclude that the photograph was indeed Petitioner.  See Foster v. Ward, 182 F.3d 1177, 1193 (10th Cir. 1999)("So long as the testimony is not incredible on its face and is otherwise capable of establishing guilt beyond a reasonable doubt, it remains solely within the province of the jury to determine the credibility of each witness.").

Additionally, Petitioner's contention that Mr. Boyland was allowed to change his testimony goes to the weight of his testimony, an issue for the jury.  Petitioner's trial counsel had the opportunity to cross-examine Mr. Boyland regarding his prior inconsistent testimony and he took advantage of the opportunity.  Tr. 49-69.  Despite these inconsistencies the jury nevertheless believed Mr. Boyland.[3]  Petitioner has not

---

[3]Petitioner's argument attacking the photographic and in court identification is well taken as Mr. Boyland's testimony seemed inconsistent at times and the undersigned is certainly aware of concerns with the reliability of eyewitness identification.  However, the jury had the opportunity to not only see Mr.
(continued...)

established that his constitutional rights were violated, and accordingly, the undersigned recommends that habeas corpus relief be denied on this claim as well.

## C. Prosecutorial Misconduct

In Ground Three Petitioner contends that prosecutorial misconduct deprived him of due process.  Petitioner raised this claim on direct appeal.[4] Although the Oklahoma Court of Criminal Appeals did not address Petitioner's specific individual claims of prosecutorial misconduct, it found that neither reversal nor modification was required on any of Petitioner's propositions of error, which included most of these same claims of prosecutorial misconduct. Summary Opinion, p.  3.

The Tenth Circuit has held that unless the comments of a prosecutor violate a specific constitutional right, the test for determining whether or not prosecutorial comments violate due process is that set forth by the Supreme Court in Donnelly v. DeChristoforo, 416 U.S. 637 (1974). Brecheen v. Reynolds, 41 F.3d 1343, 1355 (10th Cir. 1994); Mahorney v. Wallman, 917 F.2d 469, 472 (10th Cir. 1990). In Donnelly, the Supreme Court held that prosecutorial comments violate due process only when the prosecutor's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair.  DeChristoforo, 416 U.S. at 642-48.  Under this test, it is not enough for Petitioner to show that the remarks were undesirable or even universally

---

[3](...continued)
Boyland testify and be subjected to cross-examination, but the jury was also able to view Petitioner at trial and compare his features to the photograph in question and to Mr. Boyland's description of him in determining Mr. Boyland's credibility.

[4] Petitioner asks that the Court consider charges of suborning perjury and witness tampering against the prosecutor in his case.  Reply, p. 29.   This is not the appropriate venue for consideration of such charges, even if the underlying facts to support such a claim were found to exist.

condemned.  Id. at 642-43.  Rather, the relevant question is whether the remarks so

infected the trial with unfairness as to make the resulting conviction a denial of due

process.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  In assessing a claim of

prosecutorial misconduct, the allegations are considered in the context of the entire trial:

> To view the prosecutor's statements in context, [the Court looks] first at the
> strength of the evidence against the defendant and decide[s] whether the
> prosecutor's statements plausibly "could have tipped the scales in favor of
> the prosecution." ... We also ascertain whether curative instructions by the
> trial judge, if given, might have mitigated the effect on the jury of the
> improper statements.... When a prosecutor responds to an attack made by
> defense counsel, we evaluate that response in light of the defense
> argument.... Ultimately, we "must consider the probable effect the
> prosecutor's [statements] would have on the jury's ability to judge the
> evidence fairly."

Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994)(internal quotations and citations

omitted).  Because this issue was considered by the Oklahoma Court of Criminal Appeals

on direct appeal, the deferential Antiterrorism and Effective Death Penalty Act standard

of review is applicable.  Each of Petitioner's claims of prosecutorial misconduct shall be

considered in turn.

Petitioner first complains that the prosecutor argued facts not in evidence in his

closing argument.  Specifically he complains that the prosecutor made reference to the

issue of whether photograph 3 in the photo array actually showed a person with a gold

tooth, based on preliminary hearing testimony by the victim that the perpetrator had a

gold tooth.  Tr. 64-65.[5]  In his second argument on closing, the prosecutor stated:

---

[5] At the April 4, 2002, preliminary hearing, Marlon Boyland testified that the shooter had gold teeth.
Tr. 63-65.  During Petitioner's first trial Mr. Boyland testified that the shooter did not have gold teeth.  Tr.
64.  In Petitioner's second trial Mr. Boyland gave an affirmative response when asked by defense counsel
whether, "only after you found out he didn't have gold teeth did you come in and testify he didn't have gold
(continued...)

I made a mistake, I suppose, in hindsight by asking Mr. Boyland prior to the preliminary hearing about the defendant's picture in this photograph, and I notice the gold tooth, and you've seen it before, what apparently is a gold tooth. There's the gold tooth. That's what he was talking about. And you all I think are intelligent enough to know that people get anxious and have things on their mind, and they say things maybe that they shouldn't. He, about the gold tooth, that's what it's about right there, but you can see it. I got the magnifying glass for you. You can see it when you take it back to the jury room. It's not a gold tooth, but it sure does look like one in this picture.

Tr. 227-28.[6] Defense counsel did not object to this portion of the closing argument. The Oklahoma Court of Criminal Appeals, although it did not discuss its consideration of this issue, determined that the statement was not plain error. Summary Opinion, p. 3. The undersigned concludes that the Oklahoma Court of Criminal Appeals' decision in this regard was not contrary to nor an unreasonable application of clearly established federal law.

The primary issue in Petitioner's criminal case was the identification of Petitioner by Marlon Boyland; whether Petitioner was the perpetrator. On cross-examination and during closing argument defense counsel hammered away at Mr. Boyland's testimony, pointing out the numerous inconsistences between his testimony at the preliminary hearing , the first trial and the second trial. Tr. 49-69, 212-14. When faced with the obvious discrepancies, the prosecutor attempted to explain Mr. Boyland's confusion and

---

[5](...continued)
teeth . . . ?  Tr. 65.

[6] Petitioner states at page 31 of his reply brief that this is the only evidence that he has in support of his allegation that the prosecution suborned perjury and tampered with a witness. The allegations Petitioner presents do not support any inference that the prosecution suborned perjury or tampered with a witness.

the inconsistencies between his testimony at the preliminary hearing, the first trial, and the second trial.  Tr. 69-70, 76, 222-23, 227-28.

The jury was instructed that the statements and arguments of counsel are not evidence.  Instruction Nos. 9, 12.  They were instructed by the judge that their role was to consider the evidence to determine the facts, and that evidence is the testimony received from witnesses under oath, stipulations, and exhibits that were admitted into evidence.  Instruction Nos. 5, 6, 16, 34.  The jury was informed that they must decide the case solely upon the evidence presented.  Instruction No. 11, 18. 22.  Additionally, the prosecutor stated during his closing argument that statements of counsel during argument are not evidence.  Tr. 222.

Although the only testimonial evidence against Petitioner was Mr. Boyland's testimony, there was physical evidence to support Mr. Boyland's testimony.  Tr.  47, 48-49, 95-96.  When police searched Petitioner's home they discovered a plaid jacket, which Mr. Boyland identified as having been worn by the shooter.  Tr. 47, 120.  Police also discovered a hat that Mr. Boyland testified was consistent with the hat worn by the shooter.  Tr. 48-49, 120.  In light of the identification by Mr. Boyland, the physical evidence, and the numerous instructions to the jury to consider only the evidence presented, the decision of the Oklahoma Court of Criminal Appeals that Petitioner's rights were not violated by the prosecutor's statements is not contrary to or an unreasonable application of clearly established federal law.  Accordingly, the undersigned recommends that habeas corpus relief be denied on this claim.

Petitioner also complains that the prosecutor argued that his guilt was established by virtue of the fact that he had been brought to trial.  In his second closing argument the prosecutor argued:

> And I put this question to you.  Would a shooting victim be interested at all in putting anybody in a penitentiary except the person that shot him in the face?  Would anybody be interested in getting anyone except the person who did it?  Would he point just anybody out because the police captured them?  I think not, and I hope you think not.
> Would a police officer be interested in finding anyone and arresting anyone that didn't commit the crime, and having a part in putting him in the penitentiary?  If there's somebody that is a suspect in a shooting case would that officer be interested in putting anybody but the real shooter in the penitentiary?

Tr. 231-32.  Petitioner contends that by arguing that the police and victim have no interest in prosecuting innocent people, that the prosecutor violated his rights.  In support of this claim Petitioner relies on Cargle v. Mullin, 317 F.3d 1196 (10th Cir. 2003).

In Cargle, the Tenth Circuit found that the prosecutor's statement to the jury that prosecutors have no interest in prosecuting innocent people was improper because the prosecutor was injecting his personal opinion regarding Mr. Cargle's guilt.[7]   The difference herein is that the prosecutor did not offer his personal opinion as to Petitioner's guilt.

> As the State's official representative prosecuting the case on the public's behalf, the prosecuting attorney carries a special aura of legitimacy about him.  Thus, the prosecutor's opinion carries with it the imprimatur of the

---

[7] The prosecutor's argument included the following:
> "Ladies and Gentleman, all we want is justice.... [W]hat in the world have I or [assistant district attorney] Mrs. Smith or the D.A.'s Office or the police department got to gain by even trying to convict an innocent person? It would destroy our credibility. It would--it would fly in the face of everything we believe in and everything we do. We don't do those things."

Cargle, 317 F.3d at 1218.

> Government and may induce the jury to trust the Government's judgment
> rather than its own.  Further, the prosecutor's personal experience in
> criminal trials may induce the jury to accord unwarranted weight to [his
> opinions regarding the defendant's guilt].  Finally, the jury might think that
> the prosecutor's opinion is based on evidence beyond that presented at
> trial.

Id. 1218 (internal quotations and citations omitted).  In Petitioner's case the prosecutor

did not offer his own opinion as to Petitioner's guilt, and did not seek to induce the jury

to abdicate its responsibility by trusting in the Government's judgment.  In light of the

distinction between Petitioner's case and that presented in Cargle, and because the jury

was adequately instructed that arguments are not evidence and that the filing of an

information does not mean that a defendant is guilty, See Instruction Nos. 2, 17, 35,

Petitioner has failed to establish that the decision of the Oklahoma Court of Criminal

Appeals with regard to this claim was contrary to or an unreasonable application of

clearly established federal law.  Viewed in the context of the entire trial, the undersigned

concludes that this statement did not violate Petitioner's due process rights.  Accordingly,

the undersigned recommends that habeas corpus relief be denied on this claim.

Petitioner also argues that during presentation of the evidence and again during

the prosecutor's closing argument that the prosecution indicated the existence of other

evidence of Petitioner's guilt, evidence that could not be presented to the jury.  During

re-direct examination of Officer Kevin Brinker the following exchange occurred:

> Q:      Was it simply the description that [Detective Carnell]
>         gave you or were there other factors involved in your
>         helping pinpoint Mr. Cooper as a suspect?
>
> A:      There were other factors involved.

PETITIONER'S
ATTORNEY:        I object, your Honor.  I'm going to object to that and ask that
                 it be stricken.

THE COURT:       No. Overruled.

Q:               There were other factors?

A:               Yes, there were.

Tr. 128.  In his closing argument, the prosecutor stated that "Detective Carnell doing his job developed another possible suspect through some hard police work, let me tell you, and some cooperation from other law enforcement agencies.  Detective Carnell made another photo lineup.  This time the potential suspect was [Petitioner]."  Tr. 193.  During his second closing argument the prosecutor also told the jury, "you all have heard all the evidence we can give you."  Tr. 233.  Petitioner contends that this questioning and the argument were improper because they suggested to the jury the existence of other evidence of Petitioner's guilt.

The undersigned concludes that the statements about which Petitioner complains do not give rise to an inference that there was additional evidence of Petitioner's guilt that was being withheld from the jury.  The statements of the prosecutor must be considered in the context of the entire trial, not in isolation  Although in isolation the statement during closing argument that you "have heard all the evidence we can give you" might be perceived as implying that evidence of culpability has been omitted, it is but one statement in a lengthy closing argument.  Furthermore, as noted above, the jury was instructed to consider only the evidence presented in court and that arguments are not evidence.  Jurors are presumed to follow the instructions given them by the Court.

Weeks v. Angelone, 528 U.S. 225, 234 (2000).  Accordingly, with regard to the statements by the prosecutor during closing argument, Petitioner has failed to establish that the decision of the Oklahoma Court of Criminal Appeals was contrary to or an unreasonable application of clearly established federal law.  Accordingly, the undersigned recommends that habeas corpus relief be denied on this claim.

The issue remains  whether the prosecutor's questions to Officer Brinker violated Petitioner's due process rights.  The Oklahoma Court of Criminal Appeals' determination that any error was cured by the trial judge when an objection was lodged by Petitioner's counsel is clearly incorrect in light of the above-quoted testimony, overruling counsel's objection.  Accordingly, the Oklahoma Court of Criminal Appeals' factual determination regarding the question and the overruled objection is unreasonable in light of the facts. 28 U.S.C. § 2254(d)(2).

However, the testimony by Officer Brinker is troubling only if considered in isolation.  As recited above, the question and answer must be considered in the context of the entire trial.  Again, the jury was instructed repeatedly about what was evidence, that only evidence presented during court could support a conviction, that an information was only an allegation that must be supported by evidence beyond a reasonable doubt, and that Petitioner was presumed innocent.  Instruction Nos. 2, 3, 4, 5, 14, 15, 16, 17, 18, 22, 32, 33, 34, 35.  Accordingly, when considered as part of the entire trial, any error in the single question to Officer Brinker did not tip the scales in favor of the prosecution, and habeas corpus relief should be denied on this claim.

Finally, Petitioner alleges without any elaboration in his Petition that the prosecutor eluded to the fact that the judge believed him to be guilty. Petitioner did not develop this argument in his reply brief, however it was presented on direct appeal to the Oklahoma Court of Criminal Appeals as part of his prosecutorial misconduct claim.

Petitioner first contends he is entitled to relief on the basis of prosecutorial misconduct because the prosecutor made reference to the fact that Judge Combs, the judge presiding over the trial had issued the arrest warrant for Petitioner. Tr. 92, 117, 193. Petitioner contends that conveying this information to the jury served a singular purpose, indicating that Judge Combs believed Petitioner to be guilty of the crime charged. The prosecutor asked Detective Carnell from whom he had obtained an arrest warrant, and he responded that it was from Judge Combs. Tr. 92. The prosecutor also noted in a question and in closing that the warrant had been issued by Judge Combs. Tr. 117, 193. The undersigned concludes that these fleeting references to the fact that Judge Combs issued the arrest warrant, without more, did not render Petitioner's trial fundamentally unfair and deprive Petitioner of his due process rights. The prosecutor never suggested that Judge Combs believed that Petitioner was guilty and therefore issued an arrest warrant and reference to Judge Combs in this capacity did not violate Petitioner's due process rights. Additionally, as set forth in detail above, the jury was instructed that an information is not evidence of guilt, that each of the elements of shooting with the intent to kill had to be proven beyond a reasonable doubt from the evidence presented at trial, and that Petitioner was presumed innocent unless proven otherwise. Instruction Nos. 2, 3, 4, 5, 14, 15, 16, 17, 18, 22, 32, 33, 34, 35. Petitioner has

failed to establish that in light of these instructions and in the context of the entire trial that the brief references to Judge Combs as the judge that issued the arrest warrant violated his due process rights.   The decision of the  Oklahoma Court of Criminal Appeals in this regard was not contrary to or an unreasonable application of clearly established federal law, and accordingly, the undersigned recommends that habeas corpus relief be denied on this claim.

**D.  Cumulative Error**

Finally, Petitioner argues that cumulative error rendered his trial fundamentally unfair.  "'A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'"  Cargle, 317 F.3d at 1206-07 (quoting United States v. Toles, 297 F.3d 959, 972 (10th Cir.2002)(quotation omitted)).  Even if the prosecutor's comments viewed in isolation do not warrant relief, Petitioner maintains that their combined impact does.

The undersigned has considered, in context, each of the alleged instances of prosecutorial misconduct identified by Petitioner and recommends that habeas corpus relief be denied on this basis because the Oklahoma Court of Criminal Appeals' ultimate determination that Petitioner was not entitled to reversal under a cumulative error analysis is not contrary to nor an unreasonable application of Supreme Court law.  The jury was called upon to consider Mr. Boyland's identification testimony and the evidence that a jacket and hat had been located in Petitioner's home that were consistent with the clothing worn by the shooter.  Either individually or cumulatively, the prosecutor's

21

statements did not deprive Petitioner of his due process rights, especially in light of the numerous instructions to the jury regarding their role, what is and is not evidence, and what they could consider in assessing Petitioner's guilt.  Accordingly, the undersigned recommends that habeas corpus relief be denied on this claim as well.

**RECOMMENDATION**

For the reasons discussed above, it is recommended that the petition for writ of habeas corpus be denied.  Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by September 19, 2005, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives any right to appellate review of both factual and legal issues contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 30th day of August, 2005.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE